The STATE of Ohio, Appellant,

v.

GULLETT, Appellee.

[Cite as *State v. Gullett* (1992), 78 Ohio App.3d 138.]

Court of Appeals of Ohio,
Highland County.

No. 781.

Decided Jan. 3, 1992.

*Fred J. Beery,* for appellant.

*Bruce S. Wallace,* for appellee.

STEPHENSON, Presiding Judge.

This is an appeal by the state of Ohio from a judgment entered by the Hillsboro Municipal Court sustaining a motion to suppress evidence filed by Alan M. Gullett, defendant below and appellee herein. The following errors are assigned:

"Assignment One: The trial court erred in failing to sustain appellant's objection to proceeding with the suppression hearing.

"Assignment Two: The trial court erred when it determined that driving across the white edge line is not sufficient justification for stopping a driver.

"Assignment Three: The trial court erred in failing to sustain the appellant's objection to the form of appellee's motion."

The record reveals the following facts pertinent to this appeal. On December 14, 1990 at about 2:30 a.m., Sergeant Michael Cornett, a Highland County Deputy Sheriff, was on routine patrol and observed a pickup truck driven by appellee traveling westbound on State Route 124. The truck was being driven at a speed of forty miles per hour which was lawful for such highway.

The deputy followed appellee for approximately a mile and a half. At some point during this observation, the truck "drifted over to the right and crossed the white edge line and then veered back into the lane of travel." When turning onto North Shore Drive, the truck executed a sharp turn and again crossed the edge line which apparently extended to the intersection. It would

appear that no other traffic was present, that the truck was being operated within the speed limit for the area, and, other than the edge line movements, no abnormal or erratic driving was observed.

Appellee was stopped and charged with violating R.C. 4511.33(A), and, based upon the officer's observations of appellee and a field sobriety test, operating a motor vehicle while under the influence of alcohol or a drug of abuse in violation of R.C. 4511.19(A)(1). Appellee plead not guilty to these charges.

Thereafter, on February 22, 1991, appellee filed a motion to suppress which provided, *inter alia,* as follows:

"Now comes defendant, through his undersigned counsel, and hereby moves this court for an order suppressing evidence obtained by the warrantless seizure of the defendant including but not limited to:

"1. Tests of defendant's coordination and/or sobriety and/or alcohol and/or drug level, including but not limited to chemical tests of defendant's alcohol and/or drug level.

"2. Statements taken from or made by the defendant.

"3. Observations and opinions of the police officer(s) who stopped the defendant and/or arrested and/or tested the defendant regarding defendant's sobriety and/or alcohol and/or drug level.

"The defendant submits that the burden is upon the state to justify the warrantless seizure of the defendant and evidence should not [the 'not' was subsequently deleted by motion, see *infra* ] be suppressed due to the following grounds:

"1. There was no lawful cause to stop the defendant, detain the defendant, and/or probable cause to arrest defendant without a warrant." [1]

---

**1.** Additional grounds set forth in the motion are the following: .

"2. The test or tests to determine the defendant's alcohol and/or drug level were not taken voluntarily and were unconstitutionally coerced when obtained due to the threat of loss of license not sanctioned by the requirements of R.C. 4511.191.

"3. The individual administering the defendant's test of alcohol did not conduct the test in accordance with the time limitation and regulations of the state of Ohio in R.C. 4511.19[D] and the Ohio Department of Health governing such testing and/or analysis, as set forth in [Section] 3701–53–02 of the Ohio Administrative Code, including the operator's checklist instructions issued by the Ohio Department of Health included in the appendices to OAC 3701–53–02.

"4. The breath-testing instrument was not properly surveyed to determine radio frequency interference by tow [*sic* ] qualified police officers utilizing two radios and surveying from all positions the hand-held, mobile and base radios required by OAC 3701–53–02(C) and Appendix G.

A hearing on the motion to suppress was set for March 14, 1991. On April 9, 1991, the court entered an order providing that "[u]pon request of defendant hearing on the motion to suppress is hereby withdrawn."

Although not in entry form, it would appear from the transcript that the date set for jury trial was canceled by the court upon the request of appellee's counsel and a hearing on the motion to suppress was set for April 16, 1991. Counsel for appellant objected on the basis that appellee waived his objections by dismissing the motion to suppress, and the motion lacked sufficient factual grounds as required by the Criminal Rules. The court overruled the objection, and since counsel for appellee indicated that he was proceeding only upon the probable cause issue, the court permitted appellee to amend the motion to suppress so as to delete the word "not," and proceeded with the hearing.

After the hearing the court orally sustained the motion to suppress and, subsequently, filed an opinion and judgment entry to that effect. This appeal followed.

The first and third assignments of error will be jointly considered. Essentially, appellant argues that the suppression of evidence was erroneous on two grounds: (1) the appellee withdrew his suppression motion and thus waived the Fourth Amendment issue, and (2) the motion was lacking in factual detail as required by Crim.R. 47, which provides, *inter alia,* that "[the motion] shall state with particularity the grounds upon which it is made."

█ As to the waiver argument, the entry at issue provides that "[u]pon request of defendant hearing on the motion to suppress is hereby withdrawn." The entry is ambiguous as to whether only the hearing was withdrawn and the motion remained pending, or whether the motion itself was withdrawn. In any event, if appellee's request was intended to withdraw the motion, the court, pursuant to Crim.R. 12(C), had authority to consider the motion subse-

---

"5. The operator of the breath-testing instrument did not ensure that the defendant's test was conducted free of any radio transmissions from within the affected RFI zone as determined by a properly performed RFI survey, OAC 3701–53–02(C) and Appendix G.

"6. The machine or instrument analyzing defendant's alcohol level was not in proper working order and not calibrated in accordance within the time and manner required by OAC 3701–53–04.

"7. The solution used to calibrate the testing instrument was invalid and not properly maintained in accordance with OAC 3701–53–04.

"8. The operator was not licensed to operate the instrument analyzing the defendant's alcohol level nor was he supervised by a senior operator in accordance with OAC 3701–53–07. The person or persons calibrating the instrument analyzing defendant's alcohol level were not currently licensed to calibrate the instrument in accordance with OAC 3701–53–07.

"9. Statements from the defendant were obtained in violation of his Fifth Amendment right against self-incrimination and both his Fifth and Sixth Amendment right to counsel as applicable under [the] Fourteenth Amendment."

quently refiled inasmuch as "[t]he court in the interest of justice may extend the time for making pretrial motions." *Akron v. Milewski* (1985), 21 Ohio App.3d 140, 21 OBR 149, 487 N.E.2d 582. We perceive no abuse of discretion in ruling on the motion to suppress in that respect.

█ In *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 219, 524 N.E.2d 889, 892, the court stated:

"Moreover, Crim.R. 47 provides in part:

" 'An application to the court for an order shall be by motion. A motion, other than one made during trial or hearing, shall be in writing unless the court permits it to be made orally. It shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought. It shall be supported by a memorandum containing citations of authority, and may also be supported by an affidavit.'

"This provision, in the context of the ruling case law and when applied to a motion to suppress evidence obtained by search and seizure, requires that the prosecution be given notice of the specific legal and factual grounds upon which the validity of the search and seizure is challenged.

"Therefore, we hold that, to suppress evidence obtained pursuant to a warrantless search or seizure, the defendant must (1) demonstrate the lack of a warrant, and (2) raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge."

While the motion is fully sufficient in setting forth facts respecting suppression of any alcohol tests, see fn. 1, *supra*, it is lacking in specific detail with respect to the "stop" issue, stating only that "[t]here was no lawful cause to stop the defendant, detain the defendant, and/or probable cause to arrest defendant without a warrant." Nevertheless, we deem it sufficient, in light of the authority cited in appellee's memorandum in support of the motion, to place the prosecution on notice that the stop was not lawful under the investigative stop permitted under either *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, 44 O.O.2d 383, and *Delaware v. Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660, or traditional probable cause jurisprudence. Accordingly, the first and third assignments of error are overruled.

█ The thrust of the second assignment of error is that the two incidents of crossing the edge line justified the stop. It is a settled Fourth Amendment rule that there is a constitutionally protected right of privacy with respect to persons operating a motor vehicle. Drawing on the standards of *Terry*, the court in *Prouse* held, in substance, that if there exist specific articulable facts that a criminal violation has occurred or is occurring, the

vehicle may be stopped and the driver detained for further investigation. In short, the initial detention does not require that probable cause exist at that point. In *Prouse* the court stated the following:

"[W]e hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment. * * * " *Id.*, 440 U.S. at 663, 99 S.Ct. at 1401, 59 L.Ed.2d at 673.

In *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, the court held, in paragraph one of the syllabus, that "[t]he propriety of the investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances. * * * " In *Xenia v. Wallace, supra,* at paragraph two of the syllabus, the court held as follows:

"Once a defendant has demonstrated a warrantless search or seizure and adequately clarified that the ground upon which he challenges its legality is lack of probable cause, the prosecutor bears the burden of proof, including the burden of going forward with evidence, on the issue of whether probable cause existed for the search or seizure."

This court has frequently adjudicated the validity of a stop of a motor vehicle. In *State v. Arnold* (Feb. 13, 1991), Ross App. No. 1678, unreported, 1991 WL 28320, we held that a stop was proper where the driver drove over the curb and along the sidewalk. Likewise, in *State v. Simmons* (Aug. 31, 1990), Washington App. No. 89 CA 18, unreported, 1990 WL 127065, we upheld a stop where the driver drove both across the center line and off the road. In *State v. Wright* (Oct. 17, 1990), Pickaway App. No. 89 CA 19, unreported, 1990 WL 155772, we upheld the stop of a driver who was driving at a speed of thirty-five to forty miles per hour in a fifty-five-mile-per-hour zone, which speed was impeding a long line of vehicles following behind.

The court below essentially held that R.C. 4511.33, which appellant claims justified the stop, was not applicable. Said section reads, in part, as follows:

"Whenever any roadway has been divided into two or more clearly marked lanes for traffic, * * * the following rules apply:

"(A) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."

The term "roadway" is defined in R.C. 4511.01(EE) as follows:

" 'Roadway' means that portion of a highway improved, designed, or ordinarily used for vehicular travel, except the berm or shoulder. If a highway includes two or more separate roadways the term 'roadway' means any such roadway separately but not all such roadways collectively."

 It is at least arguable that the center line and the edge line define the boundaries of a single lane in which a vehicle must be operated. Even so, it does not follow that every crossing of the edge line, regardless of circumstances, constitutionally justifies a stop. Since a stop is *per se* unreasonable, it was incumbent on appellant to fully develop the circumstances to justify a non-warrant seizure. The evidence does not disclose if the initial crossing was only momentary or how far the line was crossed. Further, R.C. 4511.36 requires a right turn to be made as close as practical to the right-hand edge of the roadway. We are uninformed as to how far the edge line extended into the intersection and by how much and how far the edge line was crossed.

The touchstone of the Fourth Amendment is reasonableness. Where a vehicle is driven on a roadway with no other traffic present, there was no speeding, erratic driving or other conduct, except for the edge line incident, to indicate that appellee was impaired, the balance is in favor of the right of privacy and against the need for a stop. Based on the totality of the circumstances, we are not persuaded that sufficient articulable facts, and inferences therefrom, existed to constitutionally justify the stop.

Accordingly, the second assignment of error is overruled and the judgment affirmed.

*Judgment affirmed.*

GREY, J., concurs.

ABELE, J., concurs separately.

PETER B. ABELE, Judge, concurring.

I concur in the judgment and opinion. I write separately merely to address appellant's assertion that if the trial court's judgment is affirmed, crossing a roadway's right edge line cannot constitute the basis for an investigative stop. Our decision should not be construed in this fashion.

As the majority opinion correctly states, the issue in this case is whether specific and articulable facts exist indicating that a criminal violation had occurred. In driving-under-the-influence cases, erratic driving usually forms the factual basis for an investigative stop. In some cases, weaving *within* a single lane of travel may justify an investigative stop. See *Montpelier v. Lyon* (May 1, 1987), Williams App. No. WMS–86–16, unreported, 1987 WL 10630; *State v. Hilleary* (May 24, 1989), Miami App. No. 88–CA–5, unreport-

ed, 1989 WL 55637; and *State v. Riffle* (Nov. 15, 1991), Ross App. No. 1698, unreported, 1991 WL 260786.

In the case *sub judice*, the record does not clearly describe the vehicle's contact with the roadway's right edge line. As the majority opinion points out, the evidence adduced at the suppression hearing does not disclose whether the vehicle's crossing of the edge line was momentary or for a long duration. The record does reveal, however, that appellee's vehicle crossed the edge line one time over a distance of one and one-half miles. The record further reveals that the arresting officer testified that appellee's vehicle did not weave, or exhibit other erratic movements. During the suppression hearing the arresting officer testified as follows:

"Q. And during the time that you were following the defendant, ah, how did he move within the lane?

"A. Ah, nothing abnormal about the movement outside of the two occasions."

Therefore, I agree that the evidence adduced at the suppression hearing supports the trial court's judgment.