OPINION
Dustin Strausbaugh appeals from a judgment of the Kettering Municipal Court which found him guilty of driving with a prohibited concentration of alcohol of his breath in violation of R.C. 4511.19(A)(3).
The evidentiary hearing, where Sergeant Eric Widmyer of the Ohio State Highway Patrol was the sole witness, established the following. At approximately 1:15 a.m. on March 17, 1998, Widmyer was on routine patrol in Washington Township. While waiting to turn onto State Route 725, Widmyer observed Strausbaugh drive past him in a pick-up truck with two passengers. Widmyer pulled out onto State Route 725 and, while driving a few car lengths behind Strausbaugh's truck, Widmyer noticed Strausbaugh change lanes without signaling and drift "just a little over" the center double yellow line. When Strausbaugh reduced his speed almost to a complete stop before making a right-hand turn into a gas station from the inside, left-hand lane, Widmyer pulled into the gas station behind Strausbaugh and initiated a traffic stop.
When Widmyer walked up to Strausbaugh's window, he smelled an odor of alcohol coming from inside the vehicle. Widmyer asked Strausbaugh if he had consumed any alcohol that night and Strausbaugh stated that he had had two beers. Widmyer then asked Strausbaugh to step out of the car to perform three field sobriety tests. Strausbaugh's performance on these tests indicated to Widmyer that Strausbaugh was intoxicated. Widmyer arrested Strausbaugh and took him to the Miami Township Police Department to conduct an intoxilyzer test. At 2:02 a.m., Officer Michele Lovely administered the intoxilyzer test and Strausbaugh registered a .114 percent of a gram by weight per two hundred ten liters of breath.
Strausbaugh pled not guilty to charges of driving under the influence of alcohol and with a prohibited concentration of alcohol, in violation of R.C. 4511.19(A)(1) and 4511.19(A)(3) respectively, failing to wear a safety belt, and driving left of center. On April 24, 1998, he filed a motion to suppress, asserting that the traffic stop and arrest had been illegal. We presume that the trial court overruled Strausbaugh's motion to suppress, at least in part, following an evidentiary hearing on May 28, 1998, but no journal entry to this effect appears in the record.
During the bench trial on September 4, 1998, the State dismissed three of the charges and Strausbaugh was found guilty of the remaining charge of driving with a prohibited concentration of alcohol on his breath in violation of R.C. 4511.19(A)(3). He was sentenced to one hundred and eighty days in jail and a one thousand dollar fine, which the court stayed pending review after Strausbaugh's participation in an intervention program. We granted Strausbaugh's motion for leave to file a delayed appeal on March 5, 1999. Strausbaugh now advances three assignments of error.
 I. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS ALL EVIDENCE OBTAINED AFTER HIS UNLAWFUL STOP.
Strausbaugh's argument is two-fold. First, he argues that Widmyer lacked a reasonable and articulable suspicion to justify the initial traffic stop. Second, he asserts that there were no specific articulable facts to support Widmyer's continued detention of him after the stop was made. Strausbaugh does not contend that Widmyer lacked probable cause to arrest him.
Strausbaugh first argues that neither his failure to signal before changing lanes nor his failure to stay completely within his lane gave Widmyer reasonable articulable suspicion to initiate a traffic stop. In support of his argument, he cites five cases, including State v. Gullett (1992), 78 Ohio App.3d 138,604 N.E.2d 176, which support the proposition that a de minimis traffic violation does not give a police officer the reasonable articulable suspicion required to stop a vehicle.
"When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses." State v. Clary (Sept. 30, 1996), Lawrence App. No. 96CA7, unreported, at *2, citing State v. Mills (1992),62 Ohio St.3d 357, 366, 582 N.E.2d 972, 982, certiorari denied (1992), 505 U.S. 1227, 112 S.Ct. 3048. Thus, "in its review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." Clary, at *2, citing State v. Guysinger (1993), 86 Ohio App.3d 592, 594,621 N.E.2d 726, 727. The appellate court must, however, determine denovo whether the trial court's conclusions of law, based on those findings of fact, are correct. Guysinger, 86 Ohio App.3d at 594,621 N.E.2d at 727.
The Fourth Amendment bars unreasonable searches and seizures.Maryland v. Buie (1990), 494 U.S. 325, 331, 110 S.Ct. 1093, 1096
(citation omitted). "The stop of an automobile by police constitutes a `seizure' under the Fourth Amendment." State v.Carlile (May 14, 1999), Montgomery App. No. 17270, unreported, at *2, citing Berkemer v. McCarty (1984), 468 U.S. 420, 436-437,104 S.Ct. 3138, 3148.
"[T]he test for determining whether a traffic stop was legitimate is whether the police officer possessed an articulable reasonable suspicion that a traffic violation had occurred or was occurring." State v. Cross (May 14, 1999), Montgomery App. No. 17316, unreported, at *1. "[W]here an officer has an articulable reasonable suspicion * * * to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question." (Emphasis added.) Dayton v. Erickson (1996), 76 Ohio St.3d 3,11-12, 665 N.E.2d 1091, 1097-1098. We have previously held that the Gullett line of cases, which stood for the proposition that a de minimis traffic violation was insufficient to provide reasonable articulable suspicion, was overruled by the Ohio Supreme Court in Erickson, supra, and by the United States Supreme Court in Whren v. United States (1996), 517 U.S. 806,116 S.Ct. 1769. State v. Stephens (May 22, 1998), Montgomery App. No. 16727, unreported, at *1. See, also, State v. King (Dec. 18, 1998), Montgomery App. No. 17026, unreported, at *1.
 At the evidentiary hearing on the motion to suppress, Widmyer testified that he witnessed Strausbaugh change lanes without signaling and drift "just a little over" the center double yellow line. Although these were minor traffic violations, they were sufficient to give Widmyer reasonable articulable suspicion to initiate a traffic stop of Strausbaugh's vehicle. Furthermore, Widmyer's observations of Strausbaugh's driving would have supported a reasonable articulable suspicion of impaired driving. Thus, Strausbaugh's argument is not persuasive.
Strausbaugh next asserts that even if Widmyer had had sufficient grounds to stop him, there were insufficient specific articulable facts to justify his continued detention. Although these facts present a closer case for continued detention than some others we have reviewed, we nevertheless conclude that the facts known to Widmyer justified further detention.
If a police officer, during the initial detention of a motorist, ascertains additional reasonably articulable facts which give rise to a suspicion of criminal activity beyond that which prompted the stop, the officer may further detain the motorist to conduct a more in-depth investigation. State v. Robinette (1997),80 Ohio St.3d 234, 241, 685 N.E.2d 762, 768; State v. Griffith
(Aug. 10, 1998), Madison App. No. CA97-09-044, unreported, at *3. The odor of alcohol coming from inside a vehicle is sufficient to justify a police officer's continued detention of a motorist to investigate the possibility that the motorist is driving under the influence. State v. DeCamp (Apr. 12, 1999), Warren App. No. CA98-05-060, unreported, at *3 (concluding officer had reasonable suspicion to continue the detention of the motorist to further investigate whether the motorist had been driving under the influence when the motorist had committed a lane violation, had admitted to drinking, and had had a strong odor of alcohol in his vehicle); State v. Strassman (Nov. 20, 1998), Athens App. No. 98CA10, unreported, at *6 (stating officer's continued detention of a motorist to further inquire about his level of intoxication was proper when the officer had observed the motorist drive left of center, had perceived an odor of alcohol emanating from within the motorist's vehicle, and the motorist had admitted drinking earlier in the evening). See, also, State v. Sands (M.C. 1997),91 Ohio Misc.2d 1, 4-5, 696 N.E.2d 1107, 1109 (finding that glassy eyes and a moderate odor of alcohol on a motorist "certainly justified [the officer's] continued detention" of the motorist to investigate the possibility that the motorist had been driving under the influence of alcohol).
Widmyer testified that he had smelled an odor of alcohol coming from inside the vehicle. Further, Strausbaugh admitted that he had consumed alcohol earlier that night. Although Widmyer said that Strausbaugh had not had bloodshot or glassy eyes, slurred speech, trouble getting out his license, or problems exiting his vehicle, the odor of alcohol and Strausbaugh's admission, together with Widmyer's earlier observations of Strausbaugh's driving, were sufficient to justify Widmyer's continued detention of Strausbaugh to investigate whether he was driving under the influence. Thus, Strausbaugh's argument is not persuasive.
The first assignment of error is overruled.
 II. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION FOR ACQUITTAL AT THE END OF THE STATE'S CASE IN CHIEF.
Strausbaugh argues that the trial court erred when it overruled his motion for a judgment of acquittal because there was insufficient evidence to convict him. Specifically, he asserts that the State failed to prove that the intoxilyzer had been calibrated in accordance with the methods approved by the Director of Health.
The Ohio Supreme Court has held:
 [A] defendant charged under R.C. 4511.19(A)(1) through (4) who does not challenge the admissibility of the [breath-alcohol] test results through a pretrial motion to suppress waives the requirement on the state to lay a foundation for the admissibility of the test results at trial. The [breath-alcohol] test result is admissible at trial without the state's demonstrating that the bodily substance was withdrawn within two hours of the time of the alleged violation, that the bodily substance was analyzed in accordance with methods approved by the Director of Health, and that the analysis was conducted by a qualified individual holding a permit issued by the Director of Health * * *.
State v. French (1995), 72 Ohio St.3d 446, 451-452,650 N.E.2d 887, 892.
Strausbaugh was charged under R.C. 4511.19(A)(3) and he did not challenge the breath-alcohol test results through a pretrial motion to suppress; he raised this issue for the first time at trial. Thus, he waived the requirement that the state prove that his breath was analyzed in accordance with the methods approved by the Director of Health.
The second assignment of error is overruled.
 III. THE TRIAL COURT ERRED IN FINDING THE DEFENDANT-APPELLANT GUILTY OF DRIVING WITH A PROHIBITED LEVEL OF ALCOHOL ON HIS BREATH AGAINST THE MANIFEST WEIGHT OF EVIDENCE ADDUCED AT TRIAL [sic].
Strausbaugh argues that the manifest weight of the evidence shows that he was not guilty of driving with a prohibited concentration of alcohol of his breath. To support his argument, Strausbaugh points to the testimony of Larry Dehus, a former technical supervisor for the Miami Valley Regional Crime Laboratory. He also argues again that the intoxilyzer test was not given in accordance with the methods approved by the Director of Health, but we have already addressed that argument, supra. Furthermore, we do not think Dehus's trial testimony definitively established that Strausbaugh's breath was not properly analyzed.
When considering a claim that a conviction was against the manifest weight of the evidence, the appellate court, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [fact-finder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.'"State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, 547, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720.
Dehus testified to a reasonable degree of scientific certainty that Strausbaugh's blood-alcohol level at the time of his arrest would have been below .10 percent. His testimony was based on the following lengthy hypothetical question:
 Q. Alright. If I gave you a hypothetical as follows that a, if a twenty-seven (27) year old male with weight of one hundred and fifty-five (155) pounds who had drank two (2) Bud Lights, that being the quantity, within an hour period of time proceeding this point in time, that being the driving and had had one (1) additional Bud Light earlier by about four (4) hours earlier and the time frame of these two (2) beers was one (1) hour preceding this with the last of those two (2) being within fifteen (15) minutes of this driving, * * * and the person had had a philly cheese steak, french fries, potato salad and the philly cheese steak had lettuce, mayonnaise, tomato, lettuce [sic], A-1 sauce and onions on * * * its roast beef, could you tell me with a reasonable degree of scientific certainty what the blood-alcohol test would be at this point in time?
In its ruling, the trial court found "Mr. Dehus's testimony quite illuminating [and] interesting." The court noted, however:
 [T]hat the opinion rendered by Mr. Dehus was based upon a hypothetical question which is entirely dependent upon the data that is input exclusively from the Defendant in this case. If the alcohol ingestion varies, it's very likely in the opinion of the Court that Mr. Dehus's opinion will vary * * *.
We agree that Dehus's opinion would probably have changed had he been given different data, and the trial court was understandably cautious about crediting the underlying data provided solely by Strausbaugh. Other evidence revealed that Strausbaugh's breath had registered .114 percent of a gram by weight per two hundred ten liters of breath, an amount above the legal limit. Based upon our review of the record, we cannot say that the trial court clearly lost its way or that it created such a manifest miscarriage of justice that the conviction must be reversed.
The third assignment of error is overruled.
As all of Strausbaugh's assignments of error have been overruled, the judgment of the trial court will be affirmed.
GRADY, P.J. and BROGAN, J., concur.
Copies mailed to:
John F. Blake
Larry J. Denny
Hon. Robert L. Moore
 MERIT DOCKET